UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CRIMINAL ACTION NO. 3:03CR-58-H

UNITED STATES OF AMERICA                                                                          PLAINTIFF

V.

DANIELLE MARXEN
URIAH MARXEN                                                                                              DEFENDANTS

**MEMORANDUM OPINION**

There are two motions pending before the Court in the above-captioned case. First, Defendant, Uriah Marxen ("Mr. Marxen"), has moved to dismiss the indictment as a violation of the Due Process Clause of the Unites States Constitution. Second, the Government has moved to sever the Defendants' trial. The parties have submitted briefs and participated in a hearing before the Court and the motions are now ripe for review. The Court will address each of them in turn.

I.

Mr. Marxen has moved to dismiss the indictment based on a claim of prosecutorial vindictiveness in violation of his federal constitutional due process rights.[1] *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional'") (citation omitted). Mr. Marxen alleges that he was originally charged in state court with

---

[1] Mr. Marxen has not specified whether he is relying on the Due Process Clause contained in the Fifth Amendment or the Fourteenth Amendment. However, as far as the Court is aware, the analysis of the claims raised here is the same under each of the two clauses.

violations of state laws based on the same conduct that is the subject of the present indictment.[2] Mr. Marxen pleaded not guilty to the charges against him and expressed his intention to exercise his right to trial by jury. During the course of the state court proceedings, Mr. Marxen and the state prosecutor engaged in plea negotiations. To that end, the state prosecutor provided Mr. Marxen a written offer on April 3, 2003. In the offer, the prosecutor promised to recommend that Mr. Marxen serve a sentence of twenty years if Mr. Marxen pleaded guilty to the charges against him. Mr. Marxen rejected the offer.

Sometime thereafter, "it was communicated" to Mr. Marxen, that if he refused to plead guilty to the state charges, his case would be filed in federal court, which would result in more severe penalties.[3] Despite the threat of federal charges, Mr. Marxen rejected the state prosecutor's offer and maintained his plea of not guilty. Some time later, Mr. Marxen was indicted in federal court for the same conduct that formed the basis of the state court charges. Accordingly, Mr. Marxen argues that the federal indictment was filed in order to punish him for exercising his constitutional right to trial by jury in state court.

The Supreme Court addressed a similar claim of prosecutorial vindictiveness in *Bordenkircher*. There, a state prosecutor carried out his threat to indict the defendant under a recidivist statute carrying a mandatory life term after the defendant refused to plead guilty to the original charge of uttering a forged instrument, punishable by two to ten years. On a federal habeas petition, the defendant argued that the prosecutor's vindictive conduct violated the Due

---

[2] Specifically, in Jefferson County Circuit Court Mr. Marxen was charged with five counts of Robbery in the First Degree, one count of possession of marijuana and one count of possession of drug paraphernalia. In the indictment at issue here, Mr. Marxen has been charged with five counts of robbery in violation of 18 U.S.C. § 1951 and five counts of the use of a firearm in furtherance of a robbery in violation of 18 U.S.C. § 924.

[3] Mr. Marxen has not identified the person who allegedly made the threat to file charges in federal court.

2

Process Clause of the Fourteenth Amendment. The Supreme Court noted that there are undoubtedly constitutional limits to a prosecutor's discretion to threaten criminal defendants during the course of plea negotiations. *Id.* at 365. However, the Court concluded that "the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." *Id.*

The Court finds the alleged threat in this case was similar in kind to the threat in *Bordenkircher*. Like the defendant in that case, Mr. Marxen was told that if he did not plead guilty to the charges originally filed in state court, he would face more severe charges on which he was plainly subject to prosecution. The only question the parties have raised is whether the prosecutor "openly presented" Mr. Marxen with these "unpleasant alternatives," as required by due process.[4] *Id.*

However, even if the state prosecutor did not openly present Mr. Marxen's alternatives within the meaning of *Bordenkircher*, the Court finds that the federal prosecutor cannot be held accountable for that misconduct. In the Sixth Circuit, a defendant's due process rights are not violated when state authorities refer his case to federal authorities for prosecution as long as the

---

[4] Mr. Marxen argues that *Bordenkircher* is not controlling because Mr. Marxen was not notified of the potential of federal charges "at the outset" of plea negotiations. Mr. Marxen alleges that the first time he was told that he would be charged in federal court was eight months after plea negotiations began. The *Bordenkircher* Court appears to have been influenced by the fact that Bordenkircher was notified of the negative consequences of pleading not guilty "at the outset" of the plea negotiations. *See Bordenkircher*, 434 U.S. at 360 (noting that "[w]hile the prosecutor did not actually obtain the recidivist indictment until after the plea conferences had ended, his intention to do so was clearly expressed at the outset of the plea negotiations."). However, this Court has not found a single case holding that this is what due process requires. It is undisputed that the prosecutor "openly presented" the negative consequences of rejecting the offer before negotiations came to a close. Mr. Marxen voluntarily rejected the offer and knowingly suffered the consequences.

prosecutors are not acting as rubber stamps and exert their own discretion in deciding whether or not to prosecute. *United States v. Davis*, 15 F.3d 526, 530 (6th Cir. 1994); *United States v. Allen*, 954 F.2d 1160, 1166 (6th Cir. 1992) ("due process does not mandate that referrals be controlled through policy as long as prosecutors are not acting as rubber stamps and exert their own discretion as to whether or not to prosecute").  In this case, there is no evidence that the federal prosecutors were acting as rubber stamps.  Instead, the evidence before the Court indicates that the federal prosecutors exercised their own discretion as to whether or not to seek an indictment.  That discretion clearly gave them the constitutional authority to indict Mr. Marxen in federal court.  *See Bordenkircher*, 434 U.S. at 364 ("so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision of whether or not to prosecute. . . generally rests entirely in his discretion") (footnote omitted).

II.

The Government has moved to sever the Defendant's joint trial into two separate trials.  As a preliminary matter, Defendant Danielle Marxen argues that the Government should be judicially estopped from moving for severance because the Government opposed a motion for severance filed by Mr. Marxen earlier in the litigation.  The doctrine of judicial estoppel generally prohibits a party from asserting a legal or factual position that contradicts or is inconsistent with a prior position taken by the same party.  *See, e.g.*, *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004).  There is no specific test for determining when judicial estoppel should be applied; rather, it is regarded as an equitable doctrine.  *Id.*

The Court finds that there is insufficient cause for judicial estoppel to preclude the Government from seeking severance at this time.  In 2003, Mr. Marxen moved for severance,

claiming that the Government intended to introduce a statement made by his co-defendant that would violate his constitutional rights as recognized in *Bruton v. United States*, 391 U.S. 123 (1968). The Government opposed the motion claiming that Ms. Marxen's statements could be redacted to prevent the violation of Mr. Marxen's constitutional rights. *See, e.g.*, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). It is true that the Government is now taking a contrary position. However, Mr. Marxen withdrew his motion before the Court issued a ruling. Therefore, the Court never relied on the Government's prior assertion. *See Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 453 (6th Cir. 2005) (in applying judicial estoppel, a court may consider whether the party had successfully persuaded a court to accept his previous position). Moreover, there is no evidence that the Government acted in bad faith. Therefore, the doctrine of judicial estoppel does not preclude the Government from moving for severance. Accordingly, the Court will address the merits of the Government's motion.

Federal Rule of Criminal Procedure 14(a) provides that a court may sever a trial, if the joinder of the defendants "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). Although joint trials are favored, granting or denying severance is within the trial judge's discretion. *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (citations omitted). The movant must prove that joinder would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

The basis for the Government's motion is its plan to introduce tape-recorded statements made by each of the co-defendants during interviews with law enforcement officials, which would create potential problems under *Bruton*. At least two federal courts have granted

government motions to sever under similar circumstances. *See, e.g.*, *United States v. Rubin*, 609 F.2d 51, 65 (2d Cir. 1979) (no abuse of discretion for trial judge to grant government motion to sever defendant from his co-defendants and try him separately where it planned to introduce statements he made during interviews with federal agents that would create potential *Bruton* problems with respect to the other defendants); *see also United States v. Grullon*, 482 F. Supp. 429, 431 (D.C. Pa. 1979).

The Court finds that a severance is warranted in this case as well. Following their arrest, each Defendant gave a statement to the authorities in which he/she allegedly confessed to his/her role in a series of robberies and described in detail the role of the other defendant.[5] The Government intends to play tape recordings of those statements in their entirety at trial. The Court has reviewed the transcripts and finds that the statements cannot be redacted in such a way as to comply with the holding in *Bruton*. Accordingly, there are only two ways to comply with the Defendants' constitutional rights: (1) exclude the statements in their entirety or (2) sever the Defendants' trial. The first approach–excluding the statements–is contrary to the overall interests of justice and is unfair to the government.

There is no evidence that the severance causes the Defendants comparable disadvantage. Although the Defendants would undoubtedly prefer a joint trial in which their post-arrest statements would be inadmissable, "'[no] accused person has any recognizable legal interest in being tried with another, accused with him, though he often has an interest in not being so tried.'" *Rubin*, 609 F.2d at 65 (2d Cir. 1979) (quoting *United States v. Bronson*, 145 F.2d 939,

---

[5] For example, Mr. Marxen allegedly confessed to acting as the getaway driver in a series of robberies during his interrogation. He also stated that Ms. Marxen, the co-defendant, actually carried out those robberies and described the steps she took in detail.

943 (2d Cir. 1944) (L. Hand, J.)). Moreover, although there is some risk of delay, the Court finds that appropriate measures can be taken to alleviate that concern. Therefore, the Court holds that severance is appropriate.

       The Court will enter an order consistent with this Opinion.


cc:    Counsel of Record